IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| RONALD J. SEIFERT, | ) | |
| | ) | |
| Plaintiff | ) | Civil No. 06-128-TC |
| | ) | |
| v. | ) | FINDINGS AND |
| | ) | RECOMMENDATION |
| MICHAEL J. ASTRUE[1] | ) | |
| | ) | |
| | ) | |
| Defendant | ) | |

COFFIN, Magistrate Judge:

Plaintiff Ronald J. Seifert seeks judicial review of the Social Security Commissioner's

final decision denying his application for Disability Insurance Benefits (DIB) under Title II of the

Social Security Act. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c).  For the

reasons below, I recommend the case be remanded for further proceedings.

## BACKGROUND

Born in 1954, Seifert reports an eleventh grade education.  Tr. 75, 91.[2]  Between 1972

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. He is substituted as the defendant in this action pursuant to Fed. R. Civ. P. 25(d)(1) and 20 U.S.C. section 405(g).

[2] Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer on June 19, 2006 (Docket #9).

and 1998 Seifert reports work as a pike driver, elder care worker, carpenter, millwright, and construction foreman. Tr. 86, 103, 783.

Seifert alleges disability since November 1, 1998 due to a "low back disorder." Tr. 75, 85. His claim was initially denied and a hearing was held before an Administrative Law Judge (ALJ). Tr. 778-827. The ALJ issued an unfavorable decision on November 5, 2001. Tr. 28. The ALJ issued an amended decision on December 18, 2001, referencing additional evidence from examining psychologist Dr. Burns. Tr. 28, 477-88. 465-76. On March 21, 2002, the Appeals Council remanded the case to the ALJ for inclusion of Dr. Burns's report in the official record. Tr. 492-93.

A second hearing was held on December 19, 2002. Tr. 828-42. The ALJ issued a third decision on September 4, 2003, again finding Seifert not disabled. Tr. 28-43. The Appeals Council denied review on November 28, 2005, making the ALJ's September 2003 decision final. Tr. 8-10. Seifert seeks review of this finding.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act. 20 C.F.R. §§ 404.1520, *Bowen v. Yuckert*, 107 S.Ct. 2287, 2291 (1987). Each step is potentially dispositive. *Id.* Seifert challenges the ALJ's evaluation of the evidence and his conclusions at steps four and five.

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If he is, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment"

that meets the twelve month duration requirement. 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii). If the claimant does not have such a severe impairment, he is not disabled. *Id.*

At step three, the ALJ determines if the severe impairment meets or equals a "listed" impairment in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment is determined to equal a listed impairment, the claimant is disabled.

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by his impairments. 20 C.F.R. § 404.1520(e), Social Security Ruling (SSR) 96-8p. The ALJ uses this information to determine if the claimant can perform past relevant work at step four or work in the national economy at step five.

If proceedings reach step five, the Commissioner must determine if the claimant is capable of performing work existing in the national economy. *Yuckert*, 107 S.Ct. at 2291; *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. § 404.1520(a)(4)(v).

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F.3d at 1098. If the process reaches the fifth step the burden shifts to the Commissioner to show that jobs exist in the national economy in the claimant's residual functional capacity. *Id.* If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. §§ 404.1566, 404.1520(g).

## **THE ALJ'S FINDINGS**

In his September 2003 decision, the ALJ found Seifert's coronary artery disease and

chronic back pain severe impairments in combination. Tr. 31, 42. The ALJ found Seifert's

alleged depression and pain disorder, and borderline intellectual functioning non-severe,

resulting in "no more than a 'mild'" restriction of activities of daily living, social functioning, and

moderate difficulties, and maintenance of concentration, persistence, and pace. Tr. 31-32. The

ALJ found Seifert's allegations regarding his limitations "only partially credible." Tr. 37. The

ALJ assessed Seifert's RFC, finding, "the claimant retains the residual functional capacity to

perform light work which allows him the option to sit or stand at will." Tr. 42.

Drawing upon a vocational expert's testimony, the ALJ subsequently found that Seifert's

RFC allows him to perform both his past relevant work at step four and additional work in the

national economy at step five. Tr. 42-43. The ALJ therefore found Seifert not disabled. Tr. 43.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner

applied proper legal standards and the findings are supported by substantial evidence in the

record. 42 U.S.C. § 405(g); *Batson v. Commissioner for Social Security Administration*, 359 F.3d

1190, 1193 (9th Cir. 2004). This court must weigh "both the evidence that supports and detracts

from the Commissioner's conclusion." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

The reviewing court "may not substitute its judgment for that of the Commissioner." *Edlund v.

Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). In reviewing a credibility finding, the court

must consider whether the Commissioner provided "clear and convincing reasons" for finding a

claimant not credible. *Reddick v. Chater*, 157 F.3d, 715, 722 (9th Cir. 1998). Variable

interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational

reading. *Magallanes*, 881 F.2d at 750; *see also Batson*, 359 F.3d at 1193.

## DISCUSSION

Seifert contends the ALJ arrived at an inaccurate RFC assessment because he improperly rejected Seifert's symptom testimony and improperly evaluated the medical evidence. Seifert also claims the ALJ failed to develop the record, failed to consider his obesity, inaccurately assessed his past relevant work at step four, and made an improper step five finding.

## I.    Seifert's Obesity

Seifert contends the ALJ failed to consider the effects of his obesity upon his other impairments. Pl. Opening Br. 14, citing SSR 02-1p. An ALJ is not required to discuss the combined effects of obesity and a claimant's other impairments "unless the claimant presents evidence in an effort to establish equivalence." *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005). Seifert and his counsel presented no such evidence at either of his two hearings or in his subsequent petition for Appeals Council review. This prevents Seifert from raising this issue upon appeal: "We now hold that, at least when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearing in order to preserve them on appeal... We will only excuse a failure to comply with this rule when necessary to avoid a manifest injustice." *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999).

This authority applies to cases involving obesity. An ALJ must consider obesity when a claimant presents evidence or a theory that his obesity limits work-related functioning. *Celaya v. Halter*, 332 F.3d 1177, 1179 (9th Cir. 2003). An ALJ's failure to consider obesity is error where he is "addressing an illiterate, unrepresented claimant who very likely never knew that she *could*

assert obesity as a partial basis for her disability." *Celaya*, 332 F.3d at 1183 (emphasis original).

Seifert was represented by counsel throughout the present proceedings. Seifert's obesity

submission fails.

## II. Seifert's Credibility

The ALJ cited multiple reasons for questioning Seifert's credibility. These reasons

include Seifert's substantial gainful activity (SGA) performed after his alleged onset date,

Seifert's failure to follow prescribed treatment, Seifert's inconsistent reporting of his criminal

conduct, reports in the record of Seifert's "symptom magnification," "objective medical evidence

of record," and Seifert's inconsistent presentation at his hearing before the ALJ. Tr. 38-39. Each

of these is addressed below.

### a.    *Credibility Analysis*

The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court

to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v.

Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). Once a claimant shows an underlying impairment, the

ALJ may not, however, make a negative credibility finding "solely because" the claimant's

symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins

v. Social Security Administration*, 466 F.3d 880, 883 (9th Cir. 2006). In making credibility

findings, the ALJ may consider objective medical evidence and the claimant's treatment history,

including any failure to seek treatment, as well as the claimant's daily activities, work record, and

observations of physicians and third parties with personal knowledge of the claimant's functional

limitations. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). Additionally, the ALJ may

employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. *Id.*

b.    ***Seifert's Work Activity and Activities of Daily Living***

The ALJ cited Seifert's earnings record, work activity, and activities of daily living in his credibility finding. Tr. 39. Daily activities in credibility discussions frequently illustrate whether a claimant's activities are comparable to work activity. The ALJ noted that the record shows that Siefert earned $20,000 in 1998, which is after his December 1997 alleged onset date. Tr. 39. This court finds the ALJ's inference that these earnings represent work activity reasonable. *See Katz v. Secretary of Health and Human Services*, 972 F.2d 290, 293 (9th Cir. 1992), *see* also, *Batson*, 359 F.3d at 1193.

Additionally, limited work activity may also show a claimant is capable of doing more substantial work. 20 C.F.R. §§ 404.1571. The ALJ may appropriately consider such activity. *Katz*, 972 F.2d at 293. The ALJ's reference to Seifert's earnings record in his credibility finding should be sustained.

c.    ***Failure to Follow Treatment***

The ALJ noted that Seifert "often does not follow through with recommended medical treatment." Tr. 38. The ALJ noted that Seifert declined prescribed physical therapy after two sessions, and that Seifert's treating physician, Dr. Ward, reported that Seifert had been "noncompliant with attendance at appointments, refused a lumbar myelogram, and did not complete the EMG studies requested." Tr. 38. This finding is supported by the record. Tr. 200, 202. The ALJ also cited reviewing physician Dr. McNeill's conclusion that, "There is obvious

pain behavioral problems and apparent drug seeking behavior throughout his course of treatment, and this has all been associated with noncompliance and failure to carry out treatment plans." Tr. 38. Dr. McNeil's assessment is also based upon the record. Tr. 769-774.

Inability to afford treatment is an acceptable reason for not seeking treatment. *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995). However, Seifert makes no suggestion that he could not afford treatment, and records indicating workman's compensation insurance coverage do not support any such suggestion. The ALJ reasonably suggested Seifert failed to seek treatment on numerous occasions. *Smolen*, 80 F.3d at 1184. This finding should be sustained.

### d.    Seifert's Conduct and Criminal History

The ALJ noted Seifert's attempt to procure a disability statement in order to avoid a criminal court appearance and subsequent community service work. Tr. 38. Seifert contends that the ALJ "misunderstands" his criminal record. Pl. Opening Br. 19. The ALJ found that Seifert

> [T]old Dr. Burns that his difficulties with the law came about when his son wrote a letter to his former girlfriend... while there was a "no contact" order in place. In reality, Mr. Seifert was charged with menacing because he was apparently threatening someone with a machete.

Tr. 39.

At his June 2001 hearing, Seifert testified that he was charged with menacing in September 2000. Tr. 785-86. In August 2001 Seifert told Dr. Burns that he was incarcerated in February 2001 for violating a restraining order. Tr. 540. At his December 2002 hearing Seifert's attorney stated that, "he was, I believe, and I'm not positive about this, convicted of violation of a

restraining order and is on probation for that." Tr. 838.

This court does not find the ALJ's recitation of these events "confused."  Dr. Burns's

report reflects that Seifert told Dr. Burns of the restraining order violation but did not disclose the

menacing charge to Dr. Burns.  The ALJ's finding that Seifert therefore suggested "minimization

of his own conduct" is based upon the record and should be sustained.    An ALJ may consider a

claimant's conduct in evaluating credibility, and his observations that Seifert offered conflicting

reports of his criminal behavior are appropriate.  *Smolen*, 80 F.3d at 1284, *see Moisa v. Barnhart*,

367 F.3d 882, 885 (9th Cir. 2004).

### e.    *Evidence of Symptom Exaggeration*

The ALJ noted that Seifert's physical therapist documented "abnormal validity tests,"

which "suggested at least some symptom magnification." Tr. 38.  The ALJ also noted that

functional capacity testing revealed "somewhat dramatic pain behaviors" which "decreased

during the functional portion of the evaluation."  *Id.*  The ALJ finally noted a neurosurgeon's

suggestion of "marked psychogenic overlay" to Seifert's complaints. *Id.*

Seifert contends that, because examining psychologist Dr. Burns assessed him with a pain

disorder, his pain behavior is not in his volitional control. Pl. Opening Br. 18.  Dr. Burns's

findings regarding a pain disorder do not negate treating and examining physician observations of

Seifert's presentation.  This court emphasizes that the ALJ did not reject Seifert's symptom

testimony as "exaggeration;" the ALJ instead relied upon clinical reports of exaggeration in

assessing Seifert's credibility.  Considering this as one factor in the credibility analysis  is

permissible, especially since there remains substantial evidence for the credibility determination

without this factor. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

Seifert also suggests that an MRI affirmatively demonstrates that his symptoms correlate to specific clinical findings. Pl. Opening Br. 18, citing tr. 263. The indicated citation refers to a January 1998 MRI report. Tr. 263-64. Seifert omits citation to the radiologist's interpretation of the MRI, which concluded that clinically significant findings were limited to "mild to moderate lumbar spondylosis including a small central disc herniation at L2-L3 accentuated by 3mm of retrolisthesis of L2 with respect to L3. No evidence upon impingement upon exiting lumbar nerve roots." Tr. 264. This court finds no evidence that the January 1998 MRI study displaces the clinical impressions of exaggeration, discussed above, cited by the ALJ. The ALJ's references to Seifert's symptom exaggeration are based upon the record and should be sustained.

### f.    *Objective Medical Evidence*

Seifert contends the ALJ improperly based his credibility finding "largely on the basis that [Seifert's allegations] are not supported by objective evidence." Pl. Opening Br. 18.

The ALJ considered Seifert's medical record as one of many factors in his credibility discussion. Tr. 31. This is an appropriate consideration in concert with the other factors raised by the ALJ, discussed above. *Smolen*, 80 F.3d at 1284. The ALJ's citation to the medical evidence in his credibility finding should be sustained.

### g.    *The ALJ's Observations*

Defendant suggests the ALJ's appropriately cited his own observations of Seifert's pain behavior before and during his hearing. Defendant's Br. 8. Seifert contends such reference is unacceptable. Pl. Reply Br. 17. The ALJ noted that,

> The claimant's credibility is also reduced by inconsistencies in his presentation on the day of his hearing in June 2001. While he has alleged difficulty walking, that his right leg feels numb, and that he has fallen three to four times, I shared an elevator with the claimant prior to the hearing and observed him to walk without difficulty from the elevator to the lobby. On entering the hearing room at the appointed time he demonstrated a significantly more labored gait which appears to have been for my benefit.

Tr. 39.

Generally, this court frowns upon "sit and squirm" tests. *Perminter v. Heckler*, 765 F.2d 870, 872 (9th Cir. 1985). However, an ALJ's observations of a claimant's inconsistent behavior are permissible. *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999). This court distinguishes between an ALJ's observation that a claimant's symptoms do not support disability and an ALJ's observation that a claimant presented contradictory behavior. For this reason, the ALJ's observations should be sustained in conjunction with his other credibility findings.

In summary, the ALJ provided sufficient reasons for failing to credit Seifert's testimony that he experiences disabling impairment under Social Security standards. The ALJ references to work activity, exaggeration, and inconsistencies suggesting poor credibility are supported by the record. These findings are based upon a rational reading of the record under the proper legal standards. *Magallanes*, 881 F.2d at 750, *Batson*, 359 F.3d at 1193. The ALJ's credibility determination should be sustained.

### III.    Medical Source Statements

Seifert suggests the ALJ improperly evaluated the opinions of treating physicians Drs. Ward and Silverman, and examining psychologist Dr. Burns.

### a.     Legal Standard

Generally, a treating physician is accorded greater weight than an examining physician, and an examining physician is accorded greater weight than a reviewing physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 2003). The ALJ is responsible for evaluating medical evidence and resolving any evidentiary ambiguities or conflicts. *Edlund*, 253 F.3d at 1156, *Magallanes*, 881 F.2d at 750.

### b.     Treating Physician Dr. Ward

Seifert contends the ALJ improperly rejected treating physician Dr. Ward's opinion because he failed to acknowledge that "Dr. Ward opined that Plaintiff has certain postural limitations which the ALJ failed to include in his RFC finding." Pl. Opening Br. 16. Seifert does not identify what postural limitations he alleges the ALJ inappropriately omitted.

The ALJ accepted Dr. Ward's finding that Seifert requires work which allows him to change positions between sitting, standing, or walking. Tr. 40. The ALJ subsequently found, "While Dr. Ward has also opined that the claimant has other postural limitations, this opinion is given little weight as the only objective finding he reported to support such limitations was "significant restriction of range of motion of the lumbar spine." *Id.*

Rehabilitation specialist Dr. Ward treated Seifert between February 1998 and July 1999. Tr. 169, 220, 733. In April 2000, Dr. Ward submitted a letter to disability determination services (DDS) stating that he assessed Seifert's permanent restrictions as "Lift a maximum of 10 pounds from the floor and 20 pounds from the waist. Carry a maximum of 20 pounds. Occasional bending and twisting. Position changes for comfort from sitting, standing and walking." Tr. 168.

An ALJ may reject a physician's opinion if it is inadequately supported by clinical notes or findings. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Dr. Ward's notes do not directly address "bending and twisting." Dr. Ward's treatment indicate that Seifert twice demonstrated limited lateral lumbar flexion February and June 1998 only. Tr. 196, 215. Dr. Ward later noted that Seifert demonstrated back pain with extension, but made no notation of pain with lateral flexion or forward bending. Tr. 188, 190. 191, 193. Dr. Ward's notes between February and June 1998 do not mention pain with twisting, and Dr. Ward's notes produced between June 1998 and March 2000 make no other mention of pain with twisting. Tr. 168-224.

A claimant must show that an impairment lasts or is expected to last at least twelve months. 20 C.F.R. § 404.1509. Dr. Ward's notes do not show any limitation in twisting or bending his lumbar spine meets this durational requirement. Furthermore, an ALJ may reject portions of examination under a claimant's control if the claimant is found not credible. *Tonapetyan*, 242 F.3d at 1149. For these reasons, the ALJ was not obliged to include Dr. Ward's opinion that Seifert was limited in bending and twisting in his RFC calculation. The ALJ's analysis of Dr. Ward's opinion should be sustained.

### c.    *Treating Physician Dr. Silverman*

Seifert suggests the ALJ failed to include Dr. Silverman's limitation that Seifert "must lie down during the day." Pl. Opening Br. 16. The ALJ rejected this limitation because "Dr. Silverman reported that his opinion was based in large part on the subjective complaints of the claimant rather than upon objective findings and he noted that 'there may be significant psychological overlay contributing to the severity of his pain.'" Tr. 40.

Dr. Silverman stated that his limitations were "based upon [Seifert's] complaints." Tr.

13 - FINDINGS AND RECOMMENDATION

633.  As noted, an ALJ may appropriately reject a physician's opinion based upon a claimant's

reports when the claimant is deemed not credible.  *Tonapetyan*, 242 F.3d at 1149.  Because the

ALJ's credibility determination should be sustained, the ALJ's rejection of Dr. Silverman's

limitations predicated upon Seifert's report should be sustained as well.

###### d.    *Examining Psychologist Dr. Burns*

Seifert contends the ALJ failed to accurately assess the report and opinion produced by

examining psychologist Dr. Burns.  Pl. Opening Br. 12-13.  Seifert also contends the ALJ failed

to appropriately develop the record by requesting a medical source statement from Dr. Burns.  Pl.

Opening Br. 11.

Dr. Burns evaluated Seifert on August 15, 2001, and submitted an extensive narrative

report to the record.  Tr. 537-550.  Dr. Burns's evaluation included a clinical interview and

mental status exam, record review, and psychological testing.  Tr. 537.  Testing included

intelligence and memory testing as well as concentration and personality testing.  *Id.*  Dr. Burns

diagnosed an adjustment disorder with depressed mood and a provisional diagnosis of a pain

disorder.  Tr. 549.  Dr. Burns did not diagnosis a depressive disorder, instead recommending

Seifert be monitored for depression.  *Id.*  He also found that Seifert exhibited memory deficits

and borderline intellectual functioning.  *Id.*

The ALJ first noted that Dr. Burns's report "is inconsistent on whether the claimant

suffers from depression.  Initially the claimant appeared to deny depression, stating that he is not

in counseling and doesn't need it; later he stated, 'I am sad and depressed.'  Dr. Burns diagnosed

an adjustment disorder with depressed mood."  Tr. 31.  The ALJ subsequently noted Dr. Burns's

provisional diagnosis of a pain disorder and borderline intellectual functioning.  *Id.*  The ALJ

14 - FINDINGS AND RECOMMENDATION

reviewed Dr. Burns's test results, which showed memory deficits, and both strong and substandard performances on trail making tests designed to test concentration. The ALJ concluded, "in light of the claimant's ability to perform activities of daily living and his past work history, I find that 'borderline intellectual functioning' does not represent a severe impairment." Tr. 31-32. Dr. Burns's report did not indicate Seifert experienced a depressive disorder; any such omission by the ALJ is therefore consistent with Dr. Burns's report.

### i.    Dr. Burns's Exaggeration Opinion

Seifert first contends that Dr. Burns's opinion establishes that he is not exaggerating his symptoms. Pl. Opening Br. 18. Dr. Burns quoted Dr. Silverman's report at length, concluding, "Mr. Seifert did not appear to be exaggerating or malingering in the course of this examination." Tr. 547-48. This court notes that a Ph.D. psychologist is not qualified to evaluate a musculoskeletal impairment. Furthermore, under Social Security regulations, greater weight is appropriately given to a specialist or treating physician, in this case the opinion of Dr. Ward, discussed above. 20 C.F.R. § 404.1527(d). For this reason, the ALJ's failure to incorporate Dr. Burns's recitation of Dr. Silverman's report is insignificant.

### ii.    Borderline Intellectual Functioning

Seifert also contends that Dr. Burns's findings of borderline intellectual functioning is an impairment which must be included in a claimant's RFC assessment. Pl. Opening Br. 13. The ALJ found that Seifert's borderline intellectual functioning offered no significant limitation in Seifert's past relevant work or in his activities of daily living. Tr. 31-32. An impairment may only be found severe at step two if it limits a claimant's ability to perform work activities. 20 C.F.R. § 404.1521(a). The Commissioner concedes that the ALJ's finding regarding Seifert's

past relevant work is problematic. Defendant's Br. 16. Therefore, the ALJ may not rely upon his

past relevant work finding in  finding that Seifert's borderline intellectual functioning is non-

severe at step two. The ALJ's findings regarding Seifert's borderline intellectual functioning

should not be sustained.

### iii.    The ALJ's Duty to Develop the Record

Seifert finally contends the ALJ erroneously failed to develop the record and obtain a

Mental Health Residual Functional Capacity (MRFC) form from Dr. Burns. Pl. Opening Br. 11-

12. Seifert argues the ALJ had an affirmative duty to request such a form. *Id.*

Defendant notes that if a medical source statement has not been requested or provided, the

court's inquiry should focus on whether the decision of the ALJ is supported by substantial

evidence in the record. P. 10 of Defendant's Brief. Because the ALJ found that plaintiff's

borderline intellectual functioning was not severe at step 2, and such finding was based, in part,

on the Commissioner's admittedly problematic finding regarding Seifert's past work, there is not

substantial evidence to support the step 2 finding or to negate the lack of a MRFC form. As

such, upon remand, the ALJ shall obtain an MRFC from Dr. Burns and reconsider the step 2

finding as to borderline intellectual functioning.

### e.    Conclusion: Medical Sources

In conclusion, the record supports the ALJ's evaluation of Drs. Ward and Silverman. The

ALJ's findings regarding these physician opinions should be sustained.  For the reasons above,

the ALJ's analysis of Dr. Burns's evaluation is incomplete regarding his borderline intellectual

functioning assessment. The ALJ's analysis of Dr. Burns's opinion should not be sustained.

**IV.**  **Vocational Expert Testimony**

The ALJ must include all limitations supported by substantial evidence in his

hypothetical question to the vocational expert, but he may exclude unsupported limitations and

disregard VE testimony based upon unsupported limitations. *Bayliss*, 427 F.3d at 1217;

*Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001).

Seifert suggests the ALJ should have included additional limitations reflecting Dr.

Burns's finding that Seifert "reads only at the 5[th] month of the 6[th] grade level" in his questions to

the vocational expert. Pl. Opening Br. 19.   However, this court notes that Seifert also testified

that he attended school "to my junior year," and reported an eleventh grade education at two

other instances in the record.  Tr.  91, 539, 782.   Because of the problem with the step 2  severity

finding regarding Seifert's borderline intellectual functioning, the ALJ's questions to the

vocational expert regarding Seifert's cognitive functioning (including intellectual functioning and

reading ability ) may also be insufficient. As such, upon remand, the ALJ shall incorporate any

new  step 2 findings into  VE questions as is appropriate.

Seifert also alleges the ALJ failed  to include limitations suggested by Drs. Ward  and

Silverman, discussed above, including a requirement that he lie down during the day.  Pl.

Opening Br. 19.  Because the ALJ did not find further physical or exertional limitations

supported by the medical record, it was not error for the ALJ to exclude these limitations from

his hypothetical question. *Osenbrock*, 240 F.3d at 1164-5; *Magallanes*, 881 F.2d at 757.

## **REMAND**

After finding the ALJ erred in his decision denying Seifert's application for benefits, the

court must determine the proper remedy. This court has discretion to remand for further proceedings or for immediate payment of benefits. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is not sufficient to support the Commissioner's decision. *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989).

Improperly rejected evidence should be credited as true and an immediate award of benefits directed where "(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Harman*, 211 F.3d at 1178 (citing *Smolen*, 80 F.3d at 1292). This is not presently the case. Here, the ALJ must re-evaluate Dr. Burns's assessment of Seifert's borderline intellectual functioning and associated reading and cognitive abilities. The ALJ must then determine what, if any, effect these alleged impairments would have on Seifert's RFC.

Further proceedings are necessary for the ALJ to properly evaluate this evidence and obtain additional vocational expert testimony, if necessary, regarding Seifert's ability to perform work in the national economy.

## <u>RECOMMENDATION</u>

This court finds that the Commissioner's decision that Seifert did not suffer from disability and is not entitled to benefits under Title II of the Social Security Act cannot be sustained. This court recommends that plaintiff's motion  motion to remand be granted in part  to

obtain an MRFC from Dr. Burns and to consider Seifert's borderline intellectual functioning,

reading abilities, and other cognitive difficulties at step 2.  The ALJ must then reconsider the

RFC calculation, and  include any necessary additional limitations, and obtain any necessary VE

testimony addressing Seifert's ability to perform other work in the national economy.  The

remand should be made pursuant to sentence four of 42 U.S.C. § 405(g).

The above Findings and Recommendation will be referred to a United States District

Judge for review.  Objections, if any, are due April 2, 2007.   A  party may respond to another

party's objections ten days after service of a copy of the objections.

Dated this _____ day of March, 2007.

Thomas M. Coffin
United States Magistrate Judge

19 - FINDINGS AND RECOMMENDATION